THE UNION BANK OF BRIDGEWATER v. WM. J. SPIES, Appellant.

**Negotiable instruments:** INDORSEMENT. A note drawn payable to one of two payees does not fall within the provisions of section 3060-a41, providing that when payable to two or more persons it must be indorsed by all to pass title, but may be negotiated upon the indorsement of one of the payees.

**Same:** NEGOTIABILITY. A note given for an insurance premium is not rendered nonnegotiable by a stipulation written thereon to the effect that in case of the death of the insured before its maturity the amount with interest shall be deducted from the amount of the policy.

*Appeal from Cass District Court.*—HON. E. B. WOODRUFF, Judge.

TUESDAY, APRIL 11, 1911.

SUIT on a promissory note. There was a directed verdict for the plaintiff and judgment thereon. The defendant appeals. *Affirmed.*

*Meyers & Spies,* for appellant.

*Willard & Willard,* for appellee.

SHERWIN, C. J.—One Hugh Blackman was a soliciting agent of the Royal Mutual Life Insurance Company of Des Moines, Iowa. On the 13th of December, 1906,

the defendant signed a note for $268, payable to the Royal Mutual Life Insurance Company, or Hugh Blackman, and due in thirty days, and delivered the same to Mr. Blackman. On the 21st of December the plaintiff bought the note of Blackman, who duly indorsed it and delivered it to the bank. The note contained the following provision: "In case of the death of the insured before this note falls due, the above amount with interest shall be deducted from the amount of the policy." The defendant pleaded that the note was procured by the fraud of Blackman, that Blackman had fraudulently changed answers made by the defendant in his written application for the policy in question, and that Blackman had orally agreed that the note would be returned to the defendant if he was not satisfied with the policy.

The appellant's most insistent claim is that the plaintiff failed to prove that it was the owner of the note in suit, and in support of this claim he cites and relies on Code

1. NEGOTIABLE INSTRUMENTS: indorsement.

Supplement, section 3060a41, and authorities to which we shall hereinafter refer. Section 3060a41 provides: "That where an instrument is payable to the order of two or more payees or indorsers who are not partners, all must indorse unless the one indorsing has authority to indorse for the others." It is manifest that the note before us does not fall within the terms of the statute, for the reason that it was not made payable to two or more payees or to their order. It was made payable to either one of two payees, and under Code Supp. section 3060a8, its indorsement by either one of the payees named therein would pass title. Under the last-named provision of the statute a note made payable to one or some of several payees is payable to the order of any of the payees named, and is negotiable. Selover's Negotiable Instruments Law, section 54; Norton on Bills and Notes, page 60; Crawford, Neg. Insts. section 27; *Bank v. Lightner*, 74 Kan. 736 (88 Pac. 59). In *Mc-*

*Namee v. Carpenter,* 56 Iowa, 276, and *Gordon v. Anderson,* 83 Iowa, 224, relied upon by the appellant, the notes were payable to several jointly, and hence the cases are not authority against the rule here announced. Moreover, the evidence in this case shows the absolute ownership of the note to be in the plaintiff without any question.

The appellant further contends, or, at least, we so understand his argument, that the provision in the note for a deduction of the amount due thereon from the policy, should the maker die before the note became 2. SAME: due, made it nonnegotiable, and hence sub- negotiability. ject to his defenses. But his position can not be sustained without overriding the statute. A negotiable instrument is therein defined as follows, so far as material here: It "must contain an unconditional promise or order to pay a sum certain in money." Code Supp. 3060a1.

Does the stipulation in the note, to which we have referred, render it nonnegotiable? We are of the opinion that the question is answered in the negative by two provisions of the statute. Section 3060a3 says that "a promise is unconditional, though coupled with (1) an indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount, or (2) a statement of the transaction which gives rise to the instrument." Again, section 3060a5 provides that certain things therein enumerated shall not affect the negotiability of an instrument, and says that a provision authorizing the sale of collateral security in case the instrument is not paid at maturity, or authorizing a confession of judgment, or giving the holder an election to require something to be done in lieu of payment of money, shall not affect the negotiability. We think the provision in this note is clearly covered by section 3060a3, for the reason that it does no more than to provide that, in the event of the death of the maker before it becomes due, the amount due thereon may be taken from the indebted-

ness of the insurance company to him, and thus indicating a particular fund out of which the holder is to reimburse himself. We also think the spirit and intent of section 3060a5 clearly applies to the provision under consideration. Our conclusion is that the note `was negotiable. While other questions are argued, we do not consider them in any way controlling.

The defendant's principal contentions are that the title to the note did not pass to the bank by the indorsement of Blackman, and that the note was not negotiable, because of its terms. As both of these propositions are untenable, it is apparent that the court rightly directed a verdict for the plaintiff. *Affirmed.*