## DODSON v. MATTHEWS.—117 S. W. (2d) 969.

Middle Section. December 22, 1937.

Certiorari Denied by Supreme Court, June 11, 1938.

W. M. Fuqua, of Nashville, for appellant.
Cornelius, McKinney & Gilbert, of Nashville, for appellee.

FAW, P. J. The record in this case presents a controversy between the duly appointed and qualified administrator of the estate of Dr. G. B. Poole, deceased, on the one hand, and Mrs. Effie Poole Matthews, a sister of the deceased Dr. Poole, on the other hand, with respect to the ownership of seven $4\frac{1}{4}$ United States Liberty Loan Bonds of the aggregate par value of $7,000. The decree below was adverse to the administrator and he appealed to this Court and has assigned errors here.

Dr. G. B. Poole, a practicing physician, died intestate at his usual place of residence (the "Maxwell House") in Davidson County,

Tennessee, on January 3, 1936, and left surviving him, as his next of kin and heirs at law, two sisters and two nieces. The two sisters were Mrs. Effie Poole Matthews, residing at Mt. Carmel (P. O. Sellers) in Montgomery County, Alabama, and Mrs. Daisy Poole McKenzie, residing at Selma, Alabama. The two nieces were Mrs. Virginia Poole Miller, residing at Greeneville, Alabama and Mrs. Martha Poole Lloyd, residing at Greeneville, Texas.

On January 6, 1936, the County Court of Davidson County, Tennessee, appointed W. D. Dodson, a practicing lawyer and a resident citizen of the city of Nashville, as administrator of the estate of said decedent, Dr. G. B. Poole, and said Dodson qualified as such administrator, and thereafter, on April 23, 1936, filed the original bill in this case, in Part One of the Chancery Court of Davidson County, against Mrs. Effie Poole Matthews (then temporarily in Davidson County, Tennessee), alleging, in substance, that he then had in his possession the aforesaid seven United States Liberty Loan bonds; that, in taking possession of the personal property of his decedent, Dr. Poole, he found said bonds, along with other valuable securities, currency and jewelry, in a lock box rented and controlled by Dr. Poole in a Nashville Bank before and at the time of his death; that the defendant Mrs. Effie Poole Matthews had made demand upon complainant to turn over said seven United States Liberty Bonds to her, as her property, claiming that the estate of complainant's decedent has no interest therein, and that she, the defendant, is the owner thereof and entitled to same; but that complainant is advised, and so alleges, that defendant never at any time owned said bonds nor had any interest therein, except as one of the distributees in the administration of said estate of her deceased brother, Dr. Poole, and is not entitled to the possession of said bonds.

Complainant prayed that the Court adjudge and decree that the defendant is not the owner of nor entitled to possession of the seven $1,000 bonds in controversy, but that they are the property of the estate of Dr. G. B. Poole, deceased, to be distributed equally among the next of kin of complainant's intestate.

Defendant answered complainant's bill and alleged that "a completed and irrevocable gift of said bonds was made by complainant's intestate, Dr. G. B. Poole, to this defendant in November, 1930," and that since that time, until his death, Dr. Poole held said bonds as the agent of defendant, and that defendant is entitled to the possession of said bonds as the true owner thereof.

Defendant filed her answer as a cross-bill and prayed that she be decreed the title to and possession of the seven $1,000 United States Liberty Loan Bonds found in the safety deposit box of Dr. G. B. Poole, deceased, as aforesaid, and that cross-defendant W. D. Dodson be required to deliver said bonds to cross-complainant.

The administrator, as cross-defendant, answered the cross-bill and denied the material allegations thereof so far as they were in conflict with the allegations of his original bill.

The foregoing statement of the pleadings is a mere outline thereof for the purpose of indicating the ultimate issues made thereby. Both the original bill of the complainant administrator and the answer and cross-bill of defendant Mrs. Matthews set forth detailed statements of their respective contentions, with specific allegations of time, place and circumstances touching same; but it is, we think, unnecessary to make a further statement of the pleadings, as the Chancellor's findings (which will be hereinafter copied) are, in large measure, responsive to the issues of fact made by the pleadings, and these findings will be supplemented by statements of such additional facts, pleaded and proved, as may be deemed material when we come to dispose of the appellant's assignments of error.

The cause was heard by the Chancellor, and his findings of fact were embraced in his decree, which decree, including the findings of fact, was entered of record as follows:

"This cause came on to be heard on this the 11th day of November, 1936, upon the original bill, the answer and cross-bill, the answer to the cross-bill, as well as upon the exhibits and depositions filed in this cause, when, after argument of counsel, the Court is pleased to find, order, adjudge and decree as follows:

"(1)  That in the fall of 1930, Dr. G. B. Poole, the complainant's intestate, conferred with his attorney, Mr. John Robinson of Montgomery, Alabama, for the purpose of receiving advice as to how to effectuate a gift of some Government Bonds to his sister, Mrs. Effie Poole Matthews, and that Mr. Robinson advised Dr. Poole to place the bonds in an envelope and write on the envelope that the contents is the property of Mrs. Matthews, and to rent a safety deposit box and deposit the envelope therein.

"That about ten days or two weeks thereafter, Dr. Poole stated to Mr. Robinson that he had carried out his instructions and given these bonds to his sister and put them in a safety deposit box in the bank.

"That at this time Dr. Poole delivered to Mr. Robinson a key to the safety deposit box, with instructions to Mr. Robinson to deliver the key to Mrs. Matthews for him when he saw her.

"That three or four weeks thereafter Mr. Robinson saw Mrs. Matthews and advised her that Dr. Poole had been in his office and had left some bonds for her at the First National Bank and that he had given him the key to give to her but that Mrs. Matthews told Mr. Robinson to keep the key and she would get it later, and she never did get it or ask for the key.

"That in the fall of 1930, Dr. G. B. Poole, while visiting his sister,

Mrs. Effie Poole Matthews, in the presence of her son, S. B. Matthews, stated to Mrs. Matthews that he had placed some bonds in the First National Bank of Montgomery for her, and had left the key to the box with Mr. John Robinson, and whenever she wanted the bonds they were hers and to go and get them, and Dr. Poole gave as the reason why he did not deliver the bonds to her, that she did not have a safe place to keep them at home, and so he had placed them in the bank so they would be safe.

" (2) Shortly after November, 1930, Dr. Poole left Montgomery, Alabama, but came back periodically over a period of a year or more and never mentioned the bonds or questioned Mr. Robinson about the key, but that about a year or more after the key was delivered to Mr. Robinson, Dr. Poole came back to Montgomery and asked Mr. Robinson whether or not the key had ever been delivered to Mrs. Matthews, and when advised that the key had not been delivered to Mrs. Matthews, requested Mr. Robinson to give it to him, that he had decided to return to Nashville to live and that he would take the contents of the lock box to Nashville with him. The key was delivered to Dr. Poole by Mr. Robinson and after Dr. Poole's death his administrator, W. D. Dodson, took possession of the contents of Dr. Poole's safety deposit box in the Church Street Branch of the American National Bank, Nashville, Tennessee, and found among other things, an envelope containing seven $4\frac{1}{2}\%$ United States Liberty Bonds, and on the front of the envelope the following language, in the handwriting of Dr. Poole, appears:

" 'The within contained personal property within this envelope is the individual property of Mrs. Effie Poole Matthews of Mt. Carmel, Ala., P. O. Sellers, Ala., in which I, G. B. Poole, have no interest.

" 'Signed, November 10, 1930.

" 'G. B. Poole,

" 'Alias G. Peyton,

" '108 Washington Ave.'

"That the envelope containing the bonds was cut open at the end and that there was another envelope likewise cut open at the end found in Dr. Poole's safety deposit box containing substantially the same writing thereon, stating that the property therein was that of his other sister, Mrs. Daisy Poole McKenzie, but that no bonds were found in this envelope.

"That Mrs. Matthews demanded that W. D. Dodson, Administrator of the estate of G. B. Poole, deceased, deliver the seven $1,000.00 United States Liberty Bonds to her, claiming that they were her property, but that the administrator, W. D. Dodson, refused to deliver said bonds to her, claiming them for the estate.

. " (3) The Court further finds that Dr. Poole while in Montgom-

ery, Alabama, in the fall of 1930, loaned to his sister, Mrs. Matthews, Fifty ($50.00) Dollars which had not been paid at the time of his death, and that she owned no property other than her farm of 200 acres and the implements and stock thereon at the time said alleged gift of the bonds was made and never had more than about Fifty ($50.00) Dollars or Seventy-Five ($75.00) Dollars in cash at one time, and had no bank account, and that he communicated with her in respect to paying said Fifty ($50.00) Dollars shortly before his death, and that Mrs. Matthews owned and operated a truck farm near Montgomery, Alabama, and for many years had maintained a stall in the public market of the City of Montgomery from which business she derived a livelihood.

"That Mrs. Matthews, in November, 1930, and at the present time lived at Mt. Carmel, Alabama, which is a sparsely settled community twenty-five miles from Montgomery, Ala., and there is not any police protection at that place.

"That Dr. Poole often visited in Mrs. Matthews' home and their relationship was that of loving brother and sister.

" (4)   The Court further finds that at no time after Dr. Poole told his sister, Mrs. Matthews, about the bonds had she ever demanded said bonds from him, or any dividends thereon, or ever made demand on Mr. Robinson or Dr. Poole for the lock box key, or made any effort to get possession of said bonds or said key, and that Dr. Poole collected all dividends thereon, kept the bonds in his lock box and reported the dividends on said bonds in his income tax return to the United States Government, and paid the taxes thereon.

" (5)   The Court further finds that Mrs. Matthews did not know the number of bonds that were given to her nor did Mr. Robinson, Dr. Poole's attorney, and that no mention was made of the number thereof.

" (6)   The Court further finds that in November, 1930, Dr. G. B. Poole, complainant's intestate, intended to make a gift of the seven $1,000 United States Government Bonds found in Dr. Poole's lock box in the American National Bank at Nashville, to his sister, Mrs. Effie Poole Matthews, the defendant and cross-complainant herein, and that a constructive delivery of said bonds was made to Mrs. Matthews, and that a valid gift inter vivos between Dr. G. B. Poole and Mrs. Effie Poole Matthews was made, Dr. Poole having done sufficient under all the circumstances brought out by the evidence, to consummate the delivery of said bonds, and, further that said gift having been completed became irrevocable, and that when Dr. Poole moved the bonds from the safety deposit box in the First National Bank of Montgomery, Ala., to the safety deposit box in the American National Bank at Nashville, Tennessee, he held the seven $1,000.00 Liberty Bonds as the agent of his sister, Mrs. Effie Poole Matthews.

54

"It is, therefore, ordered, adjudged and decreed that the original bill of the complainant, W. D. Dodson, Administrator of the estate of Dr. G. B. Poole, deceased, be and the same is hereby dismissed, that the cross-bill of the defendant and cross-complainant, Mrs. Effie Poole Matthews be and is hereby sustained and that in accordance with the prayer thereof, cross-defendant, W. D. Dodson, Administrator, turn over and deliver to the cross-complainant the proceeds of the seven ($1,000.00) Liberty Bonds, said bonds having been sold by agreement of the parties and the proceeds deposited in the bank in Nashville, Tennessee.

"It is further ordered that the costs of this cause be paid by the complainant and cross-defendant, W. D. Dodson, Administrator, out of the funds constituting the assets of the estate, for which execution may issue.

"To the foregoing action of the Court, the complainant and cross-defendant, W. D. Dodson, Administrator of the estate of Dr. G. B. Poole, deceased, excepts and prays an appeal to the next term of the Court of Appeals sitting at Nashville, which the Court is pleased to grant upon the execution of an appeal bond as required by law, and the complainant and cross-defendant, W. D. Dodson, Administrator, is allowed thirty days from this date in which to file the appeal bond or otherwise perfect the appeal.

"The Clerk and Master in making up the transcript, will send up the exhibits to the depositions of witnesses in their original form.''

The complainant and cross-defendant, W. D. Dodson, administrator, etc., perfected his appeal and assigned as error the aforesaid findings of fact and decree of the Chancellor.

The pivotal question in the case is, whether or not Dr. Poole made a gift inter vivos of the bonds in question to the defendant, Mrs. Matthews, in November, 1930, at Montgomery, Alabama, as found by the Chancellor?

In order to constitute a completed and irrevocable gift inter vivos, there must be (1) an intention on the part of the donor to make the gift, and (2) the intention must be accompanied by delivery of the subject of the gift to the donee.

There is no delivery unless the complete dominion and control of the subject of the gift, to the fullest extent consistent with its nature, is renounced and relinquished by the donor and acquired by the donee. The rules which we have thus briefly summarized are, we think, well supported by the Tennessee cases, some of which are as follows: Chandler v. Roddy, 163 Tenn., 338, 43 S. W. (2d), 397; Williams v. Thornton, 160 Tenn., 229, 22 S. W. (2d), 1041; Wilson v. Wilson, 151 Tenn., 486, 267 S. W., 364; Atchley v. Rimmer, 148 Tenn., 303, 255 S. W., 366, 30 A. L. R. 1481; Scott v. Union & Planters' Bank & Trust Co., 123 Tenn., 258, 272, 130 S. W., 757; Shugart v.

Shugart, 111 Tenn., 179, 184, 76 S. W., 821, 102 Am. St. Rep., 777; Balling v. Manhattan Sav. Bank & Trust Co., 110 Tenn., 288, 293-295, 75 S. W., 1051; Marshall v. Russell, 93 Tenn., 261, 265, 25 S. W., 1070; O'Brien v. Waggoner, 20 Tenn. App., 145, 153, 96 S. W. (2d), 170; McConnell v. Fayette County Bank, 8 Tenn. App., 461; Scholze v. Scholze, 2 Tenn. App., 80, 95.

"The burden of proving that a gift was made, including the elements necessary to its validity, is on the donee." 12 R. C. L., page 971; O'Brien v. Waggoner, 20 Tenn. App., 145, 153, 96 S. W. (2d), 170.

█ There is no evidence in the record that defendant Mrs. Matthews ever at any time had possession of the bonds in controversy, or had such dominion and control of said bonds that she could have obtained actual manual possession of them without additional authorization by Dr. Poole. "A constructive delivery must be something which completely terminates the donor's custody and control of the article donated and which places it wholly under the donee's power, and enables him without further act on the donor's part to reduce it to his own manual possession. All the cases which hold a constructive possession to be good, whatever be their special circumstances, will be found to conform to this criterion; that the donor parts with all control and power of exercising dominion, while the donee obtains the exclusive power of taking physical possession and custody of the article, so that it is in fact placed under his sole dominion." Scott v. Union & Planters' Bank & Trust Co., 123 Tenn., 258, 272, 130 S. W., 757.

Dr. Poole had two keys to the lock box in the First National Bank at Montgomery, Alabama, and, according to the testimony of the witness John Robinson, one of these keys was left with him (Robinson) by Dr. Poole, with instructions to deliver it to defendant Mrs. Matthews. But it is shown by the undisputed testimony of Felix Robinson, cashier of said First National Bank, supported by documentary exhibits, that Mrs. Matthews, although in possession of a key, would not have been allowed access to said lock box without a written power of attorney executed by Dr. Poole. This was in accord with the written contract between Dr. Poole and the Bank, executed at the time Dr. Poole rented the box, and in accord with an invariable rule and custom of said Bank in dealing with all renters of such lock boxes therein. There is no suggestion in the record that Mrs. Matthews ever at any time had a written power of attorney, or written authorization of any kind, to enter said bank box; hence she did not at any time have dominion and control of any part of its contents.

But Dr. Poole at all times had access to said bank box at Montgomery, and he finally moved the contents thereof to Nashville, where he exercised full dominion and control over the bonds in contro-

versy, clipping and collecting the interest coupons and including same in his income tax return.

We find that there was no delivery of the bonds in question, by Dr. Poole to Mrs. Matthews, and, in the absence of delivery, there was no gift.

The Chancellor's finding that there was a delivery of said bonds to Mrs. Matthews is involved in the findings and decree challenged by the appellant's first, second, third, fifth and sixth assignments of error, and these assignments are sustained.

It results that the decree of the Chancery Court is reversed, the cross-bill of Mrs. Effie Poole Matthews is dismissed, the original bill of complainant administrator is sustained, and a decree will be entered adjudging that the seven $1,000 United States Liberty Loan Bonds described in complainant's bill are the property of the estate of Dr. G. B. Poole, deceased, in the hands of complainant Dodson, Administrator, for distribution among the next of kin of his said intestate.

The costs accrued in the Chancery Court will be paid as decreed by the Chancellor. The costs of the appeal will be adjudged against the appellee Mrs. Effie Poole Matthews.

Crownover and Felts, JJ. concur.