MARLIN v. MERRILL.—156 S. W. (2d), 814.

Middle Section. May 24, 1941.

Rehearing granted July 12, 1941.

Petition for Certiorari denied by Supreme Court, December 6, 1941.

330

James W. Stokes, of Nashville, for plaintiff in error.
J. G. Lackey, Jr., of Nashville, for intervening petitioners.
A. P. Ottarson, Jr., of Nashville, for defendant in error.

FELTS, J. This is an action of replevin by Mrs. Marlin against Mrs. Merrill for possession of an automobile, which each of them claims as a gift from William F. Gardner, deceased brother of Mrs. Marlin. The court of general sessions adjudged that the car be restored to Mrs. Merrill and in default of which she recover $425 of Mrs. Marlin and the surety on her replevin bond. Mrs. Marlin appealed to the circuit court. That court, holding the case could be brought up only by certiorari, dismissed the appeal. The Supreme Court, holding an appeal the proper remedy, reversed and remanded the case. Marlin v. Merrill, 176 Tenn., 63, 138 S. W. (2d), 418.

On the remand Bracey-Welsh Company and Dr. Bate Dozier filed an intervening petition on behalf of themselves and all other creditors of William F. Gardner, deceased. This petition alleged that William F. Gardner died March 13, 1939, and Mrs. Marlin qualified as his administratrix; that the assets of the estate, as shown by her inventory, amounted to only $121, while the claims filed against the estate amounted to $615.15; that the estate was insolvent; and that the bills of sale under which Mrs. Marlin and Mrs. Merrill claimed the automobile were without consideration and were "null and void as a fraud on the creditors of W. F. Gardner, deceased." The prayer was "that said bills of sale to plaintiff, Mrs. J. D. Marlin, and to defendant, Mrs. Ella Merrill, as described above, be decreed null and void and set aside, and said automobile be declared a part of the estate of said W. F. Gardner."

Mrs. Marlin, in her capacity as administratrix, was not made a party. Nor did she answer the petition in her individual capacity. Mrs. Merrill filed a plea that the court had no jurisdiction of the subject matter of the petition, since the "court cannot set aside a conveyance for fraud, mistake or duress." She also demurred to the petition upon the grounds that it did not show that the insolvency of the estate had been suggested, and that the administratrix was not a party. She also filed an answer alleging that W. F. Gardner had given her the automobile, denying that Mrs. Marlin was ever the owner of it, and denying that the creditors had any right to take it from her.

The circuit judge overruled the plea and the demurrer. Hearing the case, without a jury, upon the testimony of witnesses called by Mrs. Marlin and Mrs. Merrill, the court dismissed the petition, affirmed the judgment of the court of general sessions and rendered judgment that Mrs. Merrill recover $425 of Mrs. Marlin and the surety on her replevin bond, the judgment to be satisfied by the return of the property replevied. The costs were also adjudged against Mrs. Marlin and her surety.

Mrs. Marlin and the petitioning creditors appealed in error. She insists that the court should have upheld the gift to her and awarded her the car. They insist that the court should have held that both gifts, being without consideration, were fraudulent and void as to

creditors, and should have awarded them possession of the car, and directed that it be sold for the payment of the claims of themselves and the other creditors.

W. F. Gardner had been employed for many years by the Bell Telephone Company at Louisville, Kentucky. Shortly before January, 1937, the company retired him on a pension. A short time before his retirement he and his wife separated in Louisville. He made a property settlement with her and she obtained a divorce and the custody of their daughter. The daughter is now 21 years of age. He came to Nashville in January, 1937, to live in the home with his only sister, Mrs. Marlin. At this time he seems to have owed no debts and to have had some money on hand.

On March 27, 1937, he went to Louisville, Kentucky, and bought the automobile here in question, a Ford sedan, paying cash therefor and having the seller execute a bill of sale reciting that the car was transferred to "Mrs. John D. Marlin, 309 Russell Street, Nashville, Tennessee." He brought the car to Mrs. Marlin's home. Her testimony is that he gave her the keys and insisted that she and her husband drive the car to see how well it ran and that they did drive it to Gallatin and back that night. On April 2, 1937, Gardner went to the court house in Nashville and had the car registered in the name of Mrs. Marlin. She had no garage at her home and Gardner rented a garage in the neighborhood, where the car was kept. She kept one set of keys and he kept the other, both of them using the car. Her testimony is that when she did not want him to use the car (usually when he was drinking), she would make him give her his keys to the car. On March 16, 1938, he had the car registered in his own name; but Mrs. Marlin says this was done without her knowledge.

In the spring of 1938, Gardner began to drink to excess. On the night of June 12, 1938, he came home under the influence of drink, and Mrs. Marlin's son "got after him for drinking and using bad language in the presence of his mother." Gardner "got mad and left the house that night," taking the car with him. He went to board with a Mrs. Kirkpatrick for a short time. Later he bought a "restaurant on wheels," located on Fourth Avenue, South, Nashville, and lived in a room on the back end of the restaurant. Mrs. Merrill worked for him at the restaurant during the daytime, using the car to go to her home on Woodland Street in the afternoons and to return to the restaurant in the mornings.

Mrs. Marlin did not hear from her brother from June 12, 1938, until February 1, 1939, when she learned that he was sick at the Merchants Hotel on Broad Street. She went there to see him, found him seriously ill, called a doctor and had him removed to Dozier's Hospital. Here he was operated on, but his condition was found to be such that the operation could do him no good and it was seen that he could live only a short while. Mrs. Marlin wrote Gardner's

daughter to come to see him. Mrs. Marlin says she saw Mrs. Merrill at the hospital and asked her "to send my car back home, as Mary Floyd (Gardner's daughter) will want to use the car in going back and forth from the hospital to see her father." Mrs. Merrill says that Mrs. Marlin asked her to send "her brother's car over to her home" for the daughter's use.

However, the car was not sent. That day or the next day Gardner executed a bill of sale of the car to Mrs. Merrill, which was witnessed by two nurses at the hospital, and which recited a consideration of $10 cash paid. But this was not paid, and Mrs. Merrill claims the car as a gift. The date of this bill of sale was February 9, 1939. On the next day Mrs. Merrill had the license transferred to her. Mrs. Marlin did not learn of the gift of the car to Mrs. Merrill until after her brother's death.

A few days after the operation upon Gardner, Mrs. Marlin, at his request, took him to her home and nursed him until his death on March 13, 1939.

Mrs. Marlin qualified as his administratrix. His estate consisted of $101 cash in bank and certain wearing apparel of no money value. The debts filed against the estate aggregate $615.15. The claim of Bracey-Wells Company for $392.87 was for the funeral expenses. The claim of Dr. Bate Dozier for $16, and the claim of D. S. Tatum for $25 were for doctors' bills and expenses incident to Gardner's last illness. His former wife, Mrs. Aline G. Gardner, filed a claim for $175, which was for some telephone stock which he had sold for her about six months before his death and had never sent her the money. The other claim was that of the Gulf Refining Company for $6.28.

Replevin is a possessory action, and it is unnecessary to prove title. But plaintiff must prove his right of possession. Young v. Harris-Cortner Co., 152 Tenn., 34, 39, 268 S. W., 1120. If the right of the property or its possession is in defendant or in a stranger, plaintiff will be defeated. Lieberman, Loveman & O'Brien v. Clark, 114 Tenn., 117, 126, 127, 85 S. W., 258, 69 L. R. A., 732; Robb v. Cherry, 98 Tenn., 72, 76, 38 S. W., 412. As stated, Mrs. Marlin asserted no right to the car as administratrix. The only right asserted by her to support her action to recover possession of the car was that her brother had made a valid gift of it to her. The burden was on her to establish such a gift. If the evidence failed to establish the gift, the judgment against her was correct, irrespective of whether Mrs. Merrill or the petitioners were entitled to possession of the car.

To constitute a valid gift the evidence must show not only an intention on the part of the donor to make the gift but also a delivery by him of the subject of the gift to the donee. There is no delivery unless dominion and control of the subject of the gift, to the fullest extent consistent with its nature, is renounced and relinquished by the donor and acquired by the donee. Williams v.

Thornton, 160 Tenn., 229, 232, 22 S. W. (2d) 1041; Chandler v. Roddy, 163 Tenn., 338, 350, 43 S. W. (2d), 397; Dietzen v. American Trust & Banking Co., 175 Tenn., 49, 54, 131 S. W. (2d), 69, 71; Dodson v. Matthews, 22 Tenn. App., 49, 54, 117 S. W. (2d), 969, 972.

We think the evidence fails to sustain a valid gift of the car to Mrs. Marlin. Gardner's taking the bill of sale in her name and registering the car in her name, and the other circumstances shown are insufficient to establish delivery of the car to her. They both used the car. He kept one set of the keys himself. On March 16, 1938, he had the car registered in his own name. On June 12, 1938, when he left Mrs. Marlin's home, he took the car with him and kept it continuously thereafter. These circumstances negative the idea that he ever completely surrendered to her his dominion and control of the car so as to effect a valid gift. It is true Mrs. Marlin testified that she would make him give her his keys when she did not want him to use the car, and Mrs. Kirkpatrick testified that she had heard him say it belonged to Mrs. Marlin; but their testimony is insufficient to establish a completed gift, especially in view of these circumstances showing his retention of control and dominion of the car. Atchley v. Rimmer, 148 Tenn., 303, 312, 255 S. W., 366, 30 A. L. R., 1481; Chandler v. Roddy, supra.

Petitioners insist that the gift of the car to Mrs. Merrill was void as to them; that it was wholly without consideration and was a transfer or conveyance which rendered the donor insolvent and was fraudulent and void as to creditors of the donor. Code, secs. 7271-7280. Petitioners could have maintained a bill in equity to set aside the gift. Code, sec. 10358; Armstrong v. Croft, 71 Tenn. (3 Lea), 191; Pitt, Adm'r, v. Poole, 91 Tenn., 70, 17 S. W., 802. But can they maintain their intervening petition in this action to recover possession of the car?

Under Code, sec. 7279, and at common law a creditor whose claim is matured has either of two remedies to reach property fraudulently conveyed by his debtor. He may file a bill in equity and have the conveyance set aside; or he may reject the aid of equity, disregard the conveyance, levy execution or attachment at law on the property in the hands of the conveyee, as though no conveyance had been made. Baker et al. v. Penecost et al., 171 Tenn., 529, 534, 106 S. W. (2d), 220, 222. But this does not mean that a creditor who has no judgment, no execution and no attachment of the property can maintain an action of replevin against such a conveyee to recover possession of the property. Such a creditor, if there had been no conveyance by his debtor, could not take the property of his debtor in an action of replevin. The mere fact that one has a debt against another does not give him any right to the other's property. He can take such property only by an execution based upon a judgment or by an attachment

upon a showing of some one of the grounds authorizing issuance of an attachment.

But petitioners are not judgment creditors and have no execution; nor have they proceeded by attachment. If their petition may be sustained, it can only be as a bill to set aside a fraudulent conveyance. This seems to have been the theory upon which the petition was filed and this was the relief prayed. However, it is clear that in this case the circuit court had no jurisdiction to grant this relief. The only jurisdiction which the circuit court had in this case was appellate and not original; that is, only such jurisdiction as the court of general sessions had. New York Cas. Co. v. Lawson, 160 Tenn., 329, 339, 340, 24 S. W. (2d), 881, and cases there cited. The court of general sessions has only the jurisdiction of a justice of the peace. Sec. 2, Ch. 12, Private Acts of 1937. A justice of the peace has no jurisdiction to entertain a bill in equity to set aside a fraudulent conveyance. The chancery court has exclusive jurisdiction of such a bill. Code, secs. 10349-10363; Gibson's Suits in Chancery (4 Ed.), sec. 30, subsec. 2.

For these reasons, the judgment of the circuit court must be affirmed. Judgment will here be entered that defendant, Mrs. Merrill, recover $425 of Mrs. Marlin and the surety on her replevin bond, the judgment to be satisfied by the return of the automobile to Mrs. Merrill. The costs below will remain as adjudged by the circuit court. The costs of the appeal in error are adjudged one-half against Mrs. Marlin and her surety and the other one-half against the petitioning creditors.

Crownover, P. J., and Howell, J., concur.

## On Petitions for Rehearing.

The Bracey-Welsh Company and Dr. Bate Dozier petition for a rehearing upon the grounds that the Court overlooked Code, section 8623, and that this section entitled them to intervene and subject the car in this suit. This section is as follows: "In actions for the recovery of property, any person not a party thereto, on showing himself interested in the subject-matter of the suit, may be allowed to appear as defendant therein."

To enable one to intervene under this section, he must show himself "interested in the subject-matter of the suit." He must have an interest in the property itself, a title to it, a lien on it, or a right to its possession. Without such an interest in the property, he cannot come in under this statute. Haynes v. Rizer, 82 Tenn. (14 Lea), 246; Stretch v. Stretch, 2 Tenn. Ch., Cooper, 140. That one as a creditor might have a right to attach the property, or to reduce his debt to judgment and have execution levied on the property, is not enough to entitle him to intervene under this statute. Stretch v. Stretch, supra. In that case a bill was filed against a husband, seeking

to set up for his wife a resulting trust in his stock of merchandise, upon the ground that he had used trust funds belonging to her in buying the stock. Two of his creditors sought to come in as defendants under this statute, to resist the wife's claim. They alleged that he was indebted to them for merchandise sold to him in the line of his trade, and that they believed that none of the wife's money had been used in purchasing the stock, but that the bill was filed for the fraudulent purpose of hindering and delaying the husband's creditors. Chancellor Cooper held that they were not entitled to intervene under this statute, because they showed no right in themselves to the property in suit. In this connection he said: ". . . Whether a bill filed to set up a resulting trust would be an action for the recovery of property, within the meaning of the statute, might be doubtful; but, conceding it to be so, the applicant ought certainly to show an interest in the property itself. But these petitioners do not show either a jus in re or a jus ad rem. There is neither title to the property nor a lien upon it. All that they say is that they believe the property belongs to the defendant in the suit, and that they have 'equities' in it. Upon the face of the petition, even if we treat 'belief' of a fact as equivalent to an averment of the fact believed, they have neither a legal nor an equitable interest in the property. This may be in a condition to acquire a lien thereon, but they have not done so, nor can they, without exhausting their remedy at law by judgment and execution, or by suing out an attachment, which can only be done by positive allegations not contained in the petition, and by giving bond and security as required by law. To allow them to assert such a right, by intervening as a defendant, would be to give them the benefit of an attachment without the prerequisites of the law."

The same is true of petitioners in this suit. They do not show any right in themselves to the automobile involved. They have no title to it, no lien on it, and no right to its possession. Upon the authority of the cases above cited, and for the reasons stated in our former opinion, we think their petition cannot be maintained.

Their petition for a rehearing is denied at their cost.

Mrs. Marlin has filed a petition for a rehearing upon our holding that there was no gift of the car to her because there had been no delivery of it to her. Her petition insists that delivery of the bill of sale to her was sufficient, without delivery of the car to her, to constitute a valid gift; that there is a distinction, as to the necessity of delivery, between a gift of a chattel by parol and a gift of it by deed, or other formal written instrument transferring title; and that in the former delivery is essential, but in the latter it is not, delivery of the instrument being equivalent to delivery of the subject of the gift. This distinction was not made by counsel upon the former

hearing and we overlooked it. However, it is well settled by decisions in this state and elsewhere.

In Caines v. Marley, 10 Tenn. (2 Yerg.), 582, Wright by bill of sale gave slaves to Jones, but reserved in himself for his lifetime the possession and use of the slaves and provided that at his death Jones should have possession of the slaves. The Court first held that the gift failed for want of delivery of the slaves to Jones; but on a re-argument the Court upheld the gift as a gift of the remainder interest in the slaves, subject to the life estate of the donor.

In McEwen v. Troost, 33 Tenn. (1 Sneed), 186, Dr. Troost made a deed of gift to his son and daughter, giving them his mineralogical and geological collections, manuscripts, library, engravings, maps, and the furniture containing these articles. The deed was made June 22, 1840, and was acknowledged and registered in October, 1840. The donor retained possession of all the articles until his death in 1850. Their value at that time was between $15,000 and $20,000. The administrator filed a bill against the donees and the widow of Dr. Troost to obtain an adjudication of whether the gift was valid and whether the property belonged to the donees or to the estate. It was urged that the gift was void because the articles were not delivered to the donees but remained in the possession of the donor. The Court rejected this view and upheld the gift. The Court said:

"It is true, that delivery is essential to the validity of a parol gift of a chattel or chose in action, whether it be a gift inter vivos or causa mortis; and without delivery and a transfer of the possession, the title does not pass to the donee. The delivery must be according to the nature of the thing, as the actual delivery of a sum of money, the delivery of the key of a trunk, of a room, and the like. The effect of a valid delivery is to place the subject of the gift under the control and dominion of the donee, and his title and right to possession become absolute and irrevocable. Noble v. Smith, 2 Johns. [N. Y., 52], 55 [3 Am. Dec., 399]; Ewing v. Ewing, 2 Leigh [Va., 337], 340; Bunn v. Markbram, 2 Taunt., 224; 2 Bl. Com., 441; 2 Kent. Com., 438. But a gift by deed is valid at the common law though there be no actual delivery of the thing given. Irons v. Smallprew, 2 Barn. & Ald. 552; Caines v. Marley, 2 Yerg., 582.

"The execution and delivery of the deed are considered to be equivalent to the delivery of the subject of the gift. By our law the deed of gift is required to be registered, by which notice of the gift is given to creditors and purchasers; 1831, ch. 90, sec. 1. No inconvenience, therefore, can result in the practical operation of the rule. As between the parties, there can be no reason why the deed should not be conclusive as to the intention of the donor, and the fact that the gift was made. Its execution is a deliberate act, indicating the purpose of the donor as clearly as if there had been an actual delivery of the subject of the gift. Now, in the present case

there was no actual delivery of the cabinet and library; they remained in the possession and use of the donor until the time of his death; but the donees say it was with their consent. If the gift were in parol it would be clearly invalid. But the gift is by deed, and may therefore, be valid without actual delivery of the subject of the gift.''

McEwen v. Troost was followed in Davis v. Garrett, 91 Tenn., 147, 18 S. W., 113, where a father by deed gave a slave to his daughter, retaining possession of the slave. In this case the Court said: ''The gift of a chattel or a slave by deed duly executed and delivered is valid at the common law, though there be no actual delivery of the thing given. This has long been regarded as settled by our decisions. Caines v. Marley, 2 Yerg., 582; McEwen v. Troost, 1 Sneed, 186.''

See collection of cases in the Annotation in 63 A. L. R., 537; compare Royston v. McCulley (Tenn. Chy. Apps.), 59 S. W., 725, 52 L. R. A., 899.

The bill of sale transferring the automobile to Mrs. Marlin was as follows:

''State of Kentucky ⎞
''County of Jefferson⎠
''Know all men by these presents:
''That the ownership of the following described motor vehicle is hereby transferred free from any mortgage or other incumbrance . . . by the undersigned to Mrs. John D. Marlin, 309 Russell St., Nashville, Tennessee . . . for and in consideration of $1.00 cash or equivalent. (Here follows description of motor vehicle.)

''Louisville Motors, Inc.
''By Clien Elmer Stuter
''(Signature of Vendor).''

It was acknowledged before a notary public of Jefferson County, Kentucky, on March 27, 1937; but it does not appear to have been registered in the Register's Office of Davidson County or elsewhere.

Under the authorities above cited, this bill of sale operated as a conveyance to Mrs. Marlin of the title to the car, without delivery of the car to her, the delivery of the instrument to her being equivalent to the delivery of the car. Thereafter her brother's possession of the car was for her and not for himself. Royston v. McCulley (Tenn. Chy. Apps.), 59 S. W., 725, 52 L. R. A., 899, 905; Wilson v. Wilson, 151 Tenn., 486, 494, 267 S. W., 364; Chandler v. Roddy, 163 Tenn., 338, 352, 43 S. W. (2d), 397.

It is true our recording acts required that this bill of sale be registered in the county where the property was, in order to be effective against creditors of, or bona fide purchasers without notice from, the maker of the instrument. Code sections 7621 (subsecs. 5 and 7), 7626, 7668. But it was effective against all other persons, without being recorded. Wright v. Black, 159 Tenn., 254, 17 S. W. (2d), 917, 65 A. L. R., 357. The maker of the instrument

was the Louisville Motors, Inc.  Title passed directly from it to Mrs. Marlin.  Ownership of the car was never in her brother, W. F. Gardner.  So the only person who could take advantage of the failure to register the bill of sale would be a creditor of, or bona fide purchaser from, the Louisville Motors, Inc.

Nor do we think this conveyance of the car to Mrs. Marlin falls within Code section 7833.  This section, taken from section 2, chapter 25, Acts of 1801, with immaterial modification, is as follows: "If a conveyance be of goods or chattels, and be not on consideration deemed valuable in law, it shall be taken to be fraudulent, unless the same be by will duly proved and recorded, or by bill of sale or other instrument acknowledged or proved and registered according to law, or unless possession remain with the donee."

While the bill of sale to Mrs. Marlin was not registered and possession of the car did not remain with her, the consideration for the conveyance was valuable.  It was the full price of the car.  It is true Mrs. Marlin's brother furnished this consideration, but that fact does not bring the sale within the condemnation of this statute.  In Dillard v. Dillard, 22 Tenn. (3 Humph.), 41, 46, a father procured a third person to make a bill of sale conveying a slave to his daughter, he advancing the money for the purchase and retaining possession of the slave.  The bill of sale was not registered.  Later he became insolvent and one of his creditors seized the slave by execution.  The daughter was allowed to recover the slave.  It was held that the want of registration could affect the title in favor of creditors of the grantor only, and the father's creditors could not object to it on that account.  It was also held that the father was not so involved in debt at the time of the transaction that equity would not permit him to advance the purchase money for his daughter.  But Mrs. Merrill's position is not as strong as would be that of a creditor of Gardner.  She gave no consideration for the car.  His effort to give it to her failed because he had no title and could pass none to her.  He seems to have owed no debts at the time of purchasing the car for his sister.  However, the question whether a creditor of his could subject the car by bill in equity, is not before us.

For these reasons her petition for a rehearing is granted.  The judgment heretofore entered by this court is set aside, and judgment will be entered, reversing the judgment of the circuit court, sustaining the replevin, awarding the car to Mrs. Marlin and adjudging the costs below and one-half the costs of the appeal against Mrs. Merrill and the other half of the costs of the appeal against the intervening petitioners, the Bracey-Welsh Company and Dr. Bate Dozier.

Crownover, P. J., and Howell, J., concur.